**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 24, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MARCOS GALEAS RODAS,

     Petitioner,

v.

LORETTA E. LYNCH,
United States Attorney General,

     Respondent.

No. 16-9504
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, **BALDOCK**, and **MORITZ**, Circuit Judges.
_____

Marcos Galeas Rodas, a native and citizen of Honduras, petitions for review of

a Board of Immigration Appeals (BIA) decision upholding the immigration judge's

(IJ) denial of relief under the Convention Against Torture (CAT). Exercising

jurisdiction under 8 U.S.C. § 1252(a), we deny review.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

## BACKGROUND

Mr. Rodas has entered the United States illegally and been removed numerous times. This case arises out of an October 2014 re-entry. Upon apprehension, he expressed a fear of returning to Honduras, and after a reasonable fear interview, he was referred to an IJ. He applied for withholding of removal and CAT relief.

At his hearing before the IJ, Mr. Rodas testified that he returned to his village after being removed from the United States in 2010. His wife helped him buy a truck and a boat to engage in a fishing business, but corrupt police officers wanted him to use his vehicles to assist in their drug trafficking. When he refused to participate, they beat him and threatened him. After releasing him, they continued to harass and to threaten him. Someone broke the motor on his boat in October 2013, which he repaired a week later. A few weeks after that, officers approached him and told him it was their last request. Mr. Rodas feared they would kill him.

On cross-examination, Mr. Rodas testified that he returned to his village in 2011, and the seizure and beating occurred in February 2011. He stated that all of 2011 and all of 2012, police followed him and would take his money.

After Mr. Rodas finished his testimony, the IJ tried to reconcile inconsistencies in the record. She asked Mr. Rodas to clarify when the officers seized and beat him, and he testified that it was in the second week of April 2011. The IJ pointed out that Mr. Rodas had said in his reasonable fear interview that he had been arrested in 2008. She also noted that the agency's records showed him as being ordered removed on December 7, 2011, and being actually removed on

2

January 4, 2012. Mr. Rodas conceded that the seizure and beating could have occurred in 2012 rather than 2011.

Ultimately the IJ denied relief. She found that Mr. Rodas was not a credible witness, listing several specific examples of inconsistencies between his hearing testimony and other statements such as his application for relief and his reasonable fear interview. Particularly, she noted inconsistent statements about when the officers seized and beat him, the medical treatment he did (or did not) seek, the number of officers who participated, the manner of the beating, what documents he showed the officers, and whether officers later sent him a written death threat. The IJ also noted that his testimony about his boat's motor being broken in October 2013 and repaired within a week was not supported by a proffered receipt, which was dated March 12, 2014. And she pointed out that Mr. Rodas was apprehended in the United States on October 21, 2013, and held in custody until November 21, 2013, further casting doubt on his testimony about the motor. In the alternative, the IJ held that even if Mr. Rodas were a credible witness, he had not established his entitlement to withholding of removal or relief under the CAT.

The BIA held that the IJ's credibility finding was not clear error and upheld the determination based on "inconsistencies between the applicant's testimony and other documentary evidence regarding when he was physically assaulted in Honduras; how many persons assaulted him; and whether he sought medical attention for his injuries." Admin. R. at 3. The BIA also noted that he "did not provide a reasonable explanation for the inconsistencies." *Id.* Like the IJ, however, the BIA

3

also held that even if Mr. Rodas were a credible witness, he had not established entitlement to relief.

Mr. Rodas now petitions for review solely of the denial of CAT relief.

## ANALYSIS

"Where, as here, a single BIA member issues a brief order affirming the IJ's decision, we review the order as the final agency determination and limit our review to the grounds relied upon by the BIA." *Htun v. Lynch*, 818 F.3d 1111, 1118 (10th Cir. 2016). "However, when seeking to understand the grounds provided by the BIA, we are not precluded from consulting the IJ's more complete explanation of those same grounds." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006).

For relief under the CAT, Mr. Rodas must "establish that it is more likely than not that he . . . would be tortured if removed to" Honduras. 8 C.F.R. § 1208.16(c)(2).

> In assessing whether it is more likely than not that an applicant would be tortured in the proposed country of removal, all evidence relevant to the possibility of future torture shall be considered, including, but not limited to:
>
> (i) Evidence of past torture inflicted upon the applicant;
>
> (ii) Evidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured;
>
> (iii) Evidence of gross, flagrant or mass violations of human rights within the country of removal, where applicable; and
>
> (iv) Other relevant information regarding conditions in the country of removal.

*Id.* § 1208.16(c)(3).

Mr. Rodas's testimony about his experiences is central to his case. As discussed, however, the IJ found that he was not a credible witness, and the BIA

4

found no clear error in that adverse credibility determination. The agency's credibility assessment is a factual finding that "will ordinarily be given great weight." *Htun*, 818 F.3d at 1118-19 (internal quotation marks omitted). The "credibility determination is reviewed for substantial evidence and should not be reversed unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* at 1119 (internal quotation marks omitted). "[W]e do not weigh evidence or independently assess credibility; rather, even if we disagree with the BIA's conclusions, we will not reverse if they are supported by substantial evidence and are substantially reasonable." *Id.* (brackets and internal quotation marks omitted).

"A proper incredibility determination can be based on inherent inconsistencies in the applicant's testimony, lack of detail, or implausibility of the applicant's story." *Chaib v. Ashcroft*, 397 F.3d 1273, 1278 (10th Cir. 2005); *see also* 8 U.S.C. §§ 1158(b)(1)(B)(iii), 1229a(c)(4)(C) (allowing an IJ to consider "the demeanor, candor, or responsiveness of the applicant . . . , the inherent plausibility of the applicant's . . . account, the consistency between the applicant's . . . written and oral statements . . . , the internal consistency of each such statement, the consistency of such statements with other evidence of record . . . , and any inaccuracies or falsehoods in such statements").[1] Here, the BIA upheld the credibility determinations

---

[1] Section 1158 applies to asylum proceedings, but 8 U.S.C. § 1231, concerning withholding of removal in connection with the detention and removal of aliens ordered removed, directs triers of fact to make credibility determinations "in the
(continued)

5

because of "inconsistencies between the applicant's testimony and other documentary evidence regarding when he was physically assaulted in Honduras; how many persons assaulted him; and whether he sought medical attention for his injuries." Admin. R. at 3. These inconsistencies, which were more particularly explained by the IJ, are supported by substantial evidence in the record. Under these circumstances, we cannot conclude that any reasonable adjudicator would be compelled to conclude that Mr. Rodas is credible. *See Htun*, 818 F.3d at 1120 ("With three separate areas where the evidence supports a finding of inconsistency and nondisclosure, a reasonable adjudicator would not be compelled to find [the petitioner] credible. As such, we will not reverse the IJ's and BIA's credibility determination.").

Mr. Rodas argues that a credibility assessment must be based on issues going to the heart of his claim. The agency, however, may base a credibility determination on an inconsistency "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." 8 U.S.C. §§ 1158(b)(1)(B)(iii), 1229a(c)(4)(C). And years ago this court rejected a "heart of the matter" argument, stating "the significance of an omission must be determined by the context, and rigid rules cannot substitute for common sense. Experienced litigators do not limit their challenges to adverse testimony to matters at the heart of the case." *Ismaiel v. Mukasey*, 516 F.3d 1198, 1205 (10th Cir. 2008).

---

manner described in clauses (ii) and (iii) of section 1158(b)(1)(B)." 8 U.S.C. § 1231(b)(3)(C). Section 1229a addresses removal proceedings.

"Once one discredits [petitioner's] description [of the alleged torture], one could rationally decide that she had failed to show that if she returned to [her country] she would be killed or otherwise subjected to torture." *Niang v. Gonzales*, 422 F.3d 1187, 1202 (10th Cir. 2005); *see also Ismaiel*, 516 F.3d at 1206 ("[T]he IJ and BIA could reasonably refuse to believe [petitioner's] claims of past torture and, reviewing all the evidence, remain unpersuaded that [petitioner] had satisfied his burden of proving that he would probably be tortured if returned to [his country].").[2]

## CONCLUSION

The petition for review is denied.

Entered for the Court

Bobby R. Baldock
Circuit Judge

---

[2] Although Mr. Rodas also points to record evidence of police corruption and human rights violations in Honduras, this evidence, standing alone, did not require the agency to conclude that it is more likely than not that Mr. Rodas will be tortured if removed to Honduras. Moreover, before the BIA, Mr. Rodas failed to take issue with the IJ's conclusion that he could relocate within Honduras.